UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BRANDON LAVERGNE**                                          CIVIL ACTION

**VERSUS**

**DARREL VANNOY, ET AL.**                          NO. 22-00470-BAJ-SDJ

### RULING AND ORDER

Before the Court is Plaintiff's *pro se* **Motion For Preliminary Restraining Order And Permanent Injunctive Relief With Order To Show Cause (Doc. 54, the "Motion")**. Plaintiff's Motion seeks injunctive relief ordering Defendants to allow Plaintiff to attend "any Protestant or Catholic services 7 days a week" at either "Camp C," where Plaintiff is confined, or the "main prison." (Doc. 54 at p. 3).

Federal Rule of Civil Procedure ("Rule") 65(b) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; *and*
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b) (emphasis added).

Put differently, "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," *Hassani v. Napolitano*, No. CIV.A.3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009), requiring that the movant establish the same four elements for obtaining a preliminary injunction, which are:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). "Irreparable [injury] requires a showing that: (1) the harm to Plaintiff[] is imminent (2) the injury would be irreparable and (3) that Plaintiff[] ha[s] no other adequate legal remedy." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)). Further, injunctive relief is generally an "extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Group, Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)).

Plaintiff alleges in his Motion that his First Amendment rights are being violated by Defendants' refusal to allow him to attend both Catholic and Protestant church services across the prison grounds. (Doc. 54 at pp. 2-3). Plaintiff's claims here are the same as those First Amendment claims that are presently before the Magistrate Judge and rely on factual allegations dating back to 2018. (*See* Docs. 37, 54, 56). Those factual allegations relating to purported prior injuries, in addition to being contested by Defendants, do not, standing alone, establish the type of irreparable harm required for a preliminary injunctive relief. *See Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) ("To seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past

injury."). As to his present conditions, Plaintiff specifically alleges that "[s]ince May 2022[,] I have had very limited church access. Amounting to less than once a month for actual Catholic Mass and no access to any Protestant services even though I have always attended both in practicing my faith." (Doc. 54 at p. 2). Plaintiff alleges that this treatment differs from the treatment afforded to Muslim inmates. (*Id.*). At the core of Plaintiff's allegations lies the contention that he is prevented from attending church services with the general prison population, and that this restriction is unreasonable. (*Id.* at pp. 2-3).

Defendants challenge this account in their Memorandum In Opposition (Doc. 58, the "Opposition"), and argue that for the past year, Plaintiff has been housed at "Camp C, Jaguar 1/L, Closed Cell Restriction ('CCR')." (Doc. 58 at p. 3). Defendants further assert that Plaintiff's only religious restriction is the Louisiana State Penitentiary ("LSP") policy that incarcerated persons attend religious services only within their own housing area. (*Id.* at p. 4). Defendants note that regular Sunday services are provided to those located in Plaintiff's housing area, and Defendants have provided prison records to this effect. (Docs. 58 at p. 4, 58-1, 58-2, 58-3, 58-4, 58-5). Defendants and Plaintiff also agree that, in apparent conflict with LSP policy, Plaintiff has attended various Catholic Masses with the general prison population in the past year. (Docs. 54 at p. 2, 58 at p. 4, 58-5).

Plaintiff has responded to Defendants' Opposition. (Doc. 60, the "Response"). In his Response, Plaintiff takes issue with Defendants' assertion that Sunday services are provided to those incarcerated persons located within Plaintiff's housing area on

3

most weeks. (Doc. 60 at p. 1). Plaintiff argues that these services occur less than Defendants have indicated and occur only on "some Sundays." (*Id.*). Plaintiff offers no other description as to how frequent the Sunday services are offered. (*See id.*). Plaintiff then reiterates his contention that Muslim inmates are afforded greater opportunities to exercise their religion with the general prison population. (*Id.* at pp. 1-2). Plaintiff also raises a new issue in his Response, that of the quality and sufficiency of those persons who instruct Plaintiff in prayer. (*Id.* at p. 3). The remainder of the issues raised in Plaintiff's Response pertain to his continued confinement in his current housing area, and his wish to be relocated into the general prison population. (*See id.* at pp. 4-10). That dispute is not presently before the Court and will not be considered at this time. (*See* Docs. 37, 56).

Plaintiff has brought his claims pursuant to the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. 54). As applied to prison settings, the First Amendment obligates prisons to provide their inmates with "reasonable opportunity" to exercise their religious freedoms. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). "[W]hen a prison regulation impinges in inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The reasonableness of a prison regulation is evaluated according to four factors, those being:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; (4) whether there are "ready

alternatives that could fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests."

*Mayfield v. Texas Dep't Of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008) (quoting *Turner*, 482 U.S. at 89-91). While all factors are relevant, the first factor, a valid, rational connection, is controlling. *Id.* Further, "prison officials are entitled to 'substantial deference' in the exercise of their professional judgment. *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

RLUIPA imposes a "higher burden" on prison regulators seeking to justify regulations that impinge on the religious practices of prison inmates. *Mayfield*, 529 F.3d at 613. RLUIPA is applied using a burden-shifting framework. *Lozano v. Collier*, 98 F.4th 614, 621 (5th Cir. 2024). First, a plaintiff must show that prison officials have "substantially burdened the plaintiff's religious exercise grounded in a sincerely held religious belief." *Id.* A substantial burden exists when the contested regulation "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Id.* (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). After the plaintiff has established a substantial burden, it falls on the government to prove that the contested regulation is the "least restrictive means of [] furthering a compelling government interest." *Id.*

Based on the materials and allegations made available at this time, the Court cannot conclude that Plaintiff possesses a substantial likelihood of success on the merits of either his First Amendment or RLUIPA claims. Critically, Defendants argue that the only regulation currently, and intermittently, restricting Plaintiff is

5

the requirement that he attend religious services in his housing area. (Doc. 58 at p. 4). Defendants specifically deny that Plaintiff is prevented from exercising his combined Catholic and Protestant religious beliefs. (*Id.*). The records made available to the Court show that Plaintiff has attended several Catholic Masses since the start of the year, (Doc. 58-5), that some of those Catholic Masses have been with the general prison population, (Doc. 54 at p. 3), and that other Sunday services are provided to incarcerated persons housed in Plaintiff's unit. (Docs. 58-2, 58-3, 58-4). Moreover, Defendants note, correctly, that Plaintiff does not necessarily possess a right to religious expression in the housing area of his choosing. (Doc. 58 at pp. 4-5). Defendants thus deny that Plaintiff's right to religious expression is presently inhibited whatsoever.

The Court is not currently in a position, based on the materials and allegations provided, to determine that Defendants' account is likely to be false, as is necessary for Plaintiff to prevail on the First Amendment and RLUIPA claims underlying his Motion. On this basis alone, Plaintiff's Motion can and will be denied.

However, even assuming that Defendants' regulation has impeded Plaintiff's religious expression, Plaintiff's Motion still fails. Given the "substantial deference" to be afforded to prison officials, *DeMarco*, 914 F.3d at 389, and Plaintiff's high burden of proof for the "extraordinary remedy" of preliminary injunctive relief, *Valley*, 118 F.3d at 1050, it is not clear at this stage that Defendants' regulation lacks a "valid, rational connection" to the legitimate governmental interest of "maintaining orderly movement of incarcerated persons and in reducing the amount of excess movement

between facilities for such persons," (Doc. 58 at pp. 4-5).

Nor can the Court determine, at this time and based on the above, that Plaintiff's religious exercise has been "substantially burdened." *Lozano*, 98 F.4th at 621. Whether a challenged regulation imposes a substantial burden on an adherent's religious exercise "requires a case-by-case, fact-specific inquiry." *Adkins*, 393 F.3d at 571. Defendants have provided materials indicating that Christian prayer services are often offered to those residing within Plaintiff's housing area, and that Plaintiff is occasionally permitted to attend Catholic Mass with the general prison population. (Docs. 58 at p. 4, 58-2, 58-3, 58-4). Plaintiff would like to be afforded additional opportunities to practice his Christianity, in different settings and with different ministers to lead him in prayer, (Doc. 60 at pp. 3-4), but he has failed to provide the Court with a description of the specific religious tenets or beliefs that Defendants' regulation forces him to violate. (*See* Docs. 54, 60). This failure, in the alternative, provides the Court with ample basis to deny Plaintiff's Motion.

Accordingly, and for the reasons provided above,

**IT IS ORDERED** that Plaintiff's Motion be and is hereby **DENIED**. Plaintiff's First Amendment and RLUIPA claims will be addressed by the Magistrate Judge in due course.

Baton Rouge, Louisiana, this **26th** day of September, 2024

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA